*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
:
:
DEANNE J. BUTTS, :
:
Plaintiff, : Civil Action No. 19-6752 (FLW)
:
v. :
: **OPINION**
:
ANDREW SAUL, :
Commissioner of Social Security, :
:
Defendant. :
_____:

**WOLFSON, Chief Judge:**

Deanne J. Butts ("Butts" or "Plaintiff") appeals from the final decision of the Commissioner of Social Security, Andrew Saul ("Defendant"), denying Plaintiff disability benefits under Title II of the Social Security Act (the "Act"). After reviewing the Administrative Record, the Court finds that the Administrative Law Judge's ("ALJ") opinion was based on substantial evidence and, accordingly, affirms the decision.

I.  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff was born on March 31, 1959, making her 50 years old at her alleged disability onset date of June 30, 2009. AR 64. She completed three years of college and obtained a secretarial science/paralegal degree. AR 182. She has past relevant work experience as a teacher's aide for special needs children. AR 42, 60. Plaintiff seeks disability benefits, because she suffers from uterine cancer in remission, type II diabetes, neuropathy, depression,

1

degenerative disc disease, arthritis, irritable bowel syndrome, obesity, Grave's disease, and plantar fasciitis. AR 24.

Plaintiff protectively filed an application for Social Security Benefits on October 7, 2014, alleging a disability onset date beginning June 30, 2009.[1] AR 64. The claim was denied on March 2, 2015. AR 75. Plaintiff submitted a Request for Reconsideration on April 28, 2015, AR 113, and the claim was denied again on July 22, 2015. AR 82. After requesting a hearing before an ALJ, Plaintiff appeared in Newark, New Jersey, before the Honorable Peter R. Lee, ALJ, on January 2, 2018. AR 36. On February 5, 2018, the ALJ issued an unfavorable decision. AR 19. Thereafter, Plaintiff filed a Request for Review of Hearing Decision with the Appeals Council on April 11, 2018. AR 158. On December 21, 2018, the ALJ's decision became final, when the Appeals Council denied Plaintiff's request. AR 1.

### A. Medical Evidence

In September 2014, Plaintiff underwent an MRI due to her clinical history of lower back pain and a herniated disc, which revealed prominent bulging annuli at L2-L3, L3-L4, and L4-L5. AR 321-22. Additionally, there were small disc herniations at T11-T12, T12-L1, and L5-S1; prominent facet arthropathy; multilevel foraminal narrowing; and moderate central canal stenosis at L4-L5. AR 321-22.

On December 14, 2014, Plaintiff saw Dyana Aldea, M.D. for a one-time consultative examination due to her low back pain and bilateral foot pain. AR 334. Dr. Aldea noted Plaintiff's history of obesity, diabetes, thyroid disease, uterine cancer, irritable bowel syndrome, and arthritis. AR 335. Plaintiff reported that her back and foot pain were aggravated by

---

[1] Plaintiff previously applied for disability insurance benefits on March 13, 2012, alleging that she became disabled on June 30, 2009. This application was denied by an ALJ on August 1, 2014, and that decision is final and binding. AR 22.

2

weightbearing activities, especially standing, walking, bending and lifting. AR 334. During the physical examination, Dr. Aldea noted that Plaintiff was obese but in "no acute distress." AR 335. Dr. Aldea observed that Plaintiff's gait was normal, though she was unable to walk on her heels or toes due to foot pain, and she was only able to squat 50% and required one hand on the table during the squat due to her lower back pain. AR 335. Plaintiff also had a minimally restricted range of motion of the lumbar spine with extension, and Dr. Aldea noted mild tenderness to palpation in the lumbar spine area. AR 335. Dr. Aldea further noted that Plaintiff had a full range of motion in all extremities, and her "strength was 5/5 throughout including bilateral hips knees and ankles." AR 335. Although Plaintiff had no sensation to light touch, pinprick or vibration in either foot to the ankles, and sensation to both legs was diminished, there was no significant atrophy, inflammation or effusion, and her strength was good. AR 335-36. Dr. Aldea concluded Plaintiff was experiencing "marked sensory deficits in bilateral feet and moderate sensory deficits in bilateral legs with likely diabetic neuropathy," and noted arthritic changes in Plaintiff's foot. AR 336.

The administrative record also contains notes from, Stephen Pilipshen, M.D., a gastroenterologist, who first saw Plaintiff in January 2013, when she had an initial consultation for a "surveillance colonoscopy." AR 298." After a colonoscopy in February 2014, Dr. Pilipshen noted that the procedure revealed diverticulosis, hemorrhoids, and mild radiation proctitis. AR 323. Dr. Pilipshen determined that Plaintiff's diarrhea was probably from both IBS and chronic effects of radiation from her previous cancer treatments. AR 287; 326. He recommended treatment with Canasa suppositories, Lomotil, Levsin SL, and Align, and advised her to change her diet. AR 326.

Plaintiff's weight has been noted to be anywhere from 315 to 333 pounds, her height is listed at approximately five feet, four inches tall, and she was generally classified as morbidly obese. AR 278; 287; 291; 296; 298; 302; 325; 334.

On February 3, 2015, Plaintiff saw a psychologist, Dr. Lucille Esralew, for a mental status examination. AR 341. Dr. Esralaw reported that, on examination, Plaintiff knew the correct date; knew the current president and the two preceding presidents; spelled the word "world" correctly both forward and backwards; performed serial sevens with two mistakes which were uncorrected; and only remembered two of the three words on the short word list upon delayed recall but all on immediate memory. AR 342. Dr. Esralew concluded that Plaintiff was experiencing depression because of the major changes in her lifestyle, but that most of her symptoms resulted from her underlying medical conditions. AR 342.

In March 2015 and July 2015, the state agency physician consultants reviewed the relevant medical evidence and opined that Plaintiff was not disabled, and in fact, could perform a range of light work in the national economy. AR 64-76, 78-88.

### B. Plaintiff's Testimony Before ALJ

Plaintiff testified at the hearing before ALJ Lee on January 2, 2018. She testified that she has a paralegal degree, and worked for the Tennessee Bar in 1996 and 1997. AR 42. In 2002, she began work as a teacher's assistant at a private parochial school for seven and a half years until her job was eliminated due to budget constraints. AR 42-43.

Plaintiff was diagnosed with cancer in June 2009. AR 45. Since undergoing surgery in July 2009, her cancer has been in remission. AR 45. Plaintiff's irritable bowel syndrome started when she underwent radiation treatments for her cancer treatment. See AR 51, 54

Plaintiff was first diagnosed with diabetes at the age of 26 when she was pregnant with her first child. AR 47. Plaintiff began experiencing neuropathy in her left foot in her 50s, and, as a result,

4

had three toes amputated on that foot on December 31, 2015. AR 46. Plaintiff attended the hearing with a cane, which she uses most often when she leaves the house in order to help her climb stairs and balance. AR 46-47. She testified that her husband had to install railings in their home so she would have something to support her when going upstairs. AR 47.

Plaintiff testified that her back issues began when she was in her 40s, but have become worse "now that [she's] older…" AR 50. The condition makes bending over and lifting things difficult, and she has her daughter help with some tasks that require lifting and bending over. AR 50.

Plaintiff indicated that she was able to independently maintain her personal hygiene, feed her two cats, and take care of her special needs daughter. AR 50. She prepares easy meals and does laundry on a daily basis. AR 49-50. Plaintiff confirmed that she drives her special needs daughter to meet her friends, and also drives her to various activities and events. AR 52-53, 56.

### C. ALJ's Decision

ALJ Lee issued his decision on February 5, 2018. AR 17-35. At step one of the Commissioner's five-step sequential evaluation process, the ALJ found that Plaintiff did not engage in substantial gainful activity during the relevant period. AR 24.

At step two, the ALJ identified Plaintiff's severe impairments as diabetes, neuropathy, degenerative disc disease, arthritis, irritable bowel syndrome, obesity, hypothyroidism (Grave's disease), and plantar fasciitis. AR 24. The ALJ concluded that the evidence failed to establish a "severe" impairment involving uterine cancer, as Plaintiff was successfully treated with a complete hysterectomy and post-operative radiation in 2009. AR 24-25. Similarly, Plaintiff's depression was also determined to be non-severe. AR 25. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. part 404, subpart P, app. 1. AR 26-27.

The ALJ then explained that Plaintiff retained the residual functional capacity ("RFC") to perform a range of light work but with the following additional limitations: never climb ropes, ladders or scaffolds; never be exposed to unprotected heights or hazardous machinery; occasionally climb stairs and ramps; never crawl; occasionally stoop and crouch; and occasionally balance. AR 27.

At step four, the ALJ concluded that Plaintiff, through the date of last insured, was able to return to her past relevant work as a teacher's aide, and, accordingly, was not disabled within the meaning of the Act. AR 30-31.

## II. STANDARD OF REVIEW

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). A reviewing court is not "empowered to weigh the evidence

or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, 507 U.S. 924 (1993). Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements. *See* 42 U.S.C. § 423(c). Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427. An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability. *Id.* at § 1382c (a)(3)(A)-(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id.* at § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination

7

of impairments" that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.* A claimant who does not have a severe impairment is not considered disabled. *Id.* at § 404.1520(c); *see Plummer*, 186 F.3d at 428.

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id.* at § 404.1520(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. § 404.1520(e); *Bowen*, 482 U.S. at 141. If the claimant is able to perform previous work, the claimant is determined to not be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen*, 482

U.S. at 141-42. The claimant bears the burden of demonstrating an inability to return to the past relevant work. *Plummer*, 186 F.3d at 428. Finally, if it is determined that the claimant is no longer able to perform his or her previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." *Bowen*, 482 U.S. at 146-47 n.5; *Plummer*, 186 F.3d at 428. This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(f). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled. *Id*.

## III. DISCUSSION

Plaintiff contests three aspects of the ALJ's decision. She argues that the ALJ erred in failing to 1) properly assign exertional limitations related to Plaintiff's degenerative disc disease, arthritis and neuropathy, 2) include appropriate non-exertional limitations in his RFC determination, and 3) properly consider Plaintiff's obesity in accordance with SSR 02-1p. As the first two of these arguments are both challenges to the ALJ's RFC assessment, I will consider them together before turning to Plaintiff's obesity argument.

### A. The ALJ's RFC Assessment as to Exertional and Non-Exertional Limitations

In his RFC determination, the ALJ stated that Plaintiff had the ability to perform light work, except she can never climb ropes, ladders or scaffolds; never be exposed to unprotected heights or hazardous machinery; only occasionally climb stairs and ramps; never crawl; occasionally stoop and crouch; and occasionally balance. AR 27. Plaintiff argues that the ALJ erred by failing to include adequate exertional and non-exertional limitations in this assessment.

"Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220

F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999));
see 20 C.F.R. § 404.1545(a). The ALJ is responsible for making the ultimate determination of an
individual's RFC. 20 C.F.R. § 404.1546; *see Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356,
361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency
consultants—must make the ultimate disability and RFC determinations."). "[I]n making a
residual functional capacity determination, the ALJ must consider all evidence before him," and,
although the ALJ may weigh the credibility of the evidence, he must "give some indication of
the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett*, 220
F.3d at 121; *see Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "In the absence of such an
indication, the reviewing court cannot tell if significant probative evidence was not credited or
simply ignored." *Cotter*, 642 F.2d at 705. "Where the ALJ's findings of fact are supported by
substantial evidence, [district courts] are bound by those findings, even if [the courts] would
have decided the factual inquiry differently." *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292
(3rd Cir. 2012) (internal quotation marks and citation omitted).

   With respect to Plaintiff's alleged exertional limitations, Plaintiff relies mainly on a single
consultive examination by Dr. Aldea, as well as Plaintiff's subjective complaints, in arguing that the
RFC did not properly account for limitations resulting from Plaintiff's degenerative disc disease,
arthritis and neuropathy. Contrary to Plaintiff's contention, the ALJ closely reviewed the medical
evidence—including Dr. Aldea's examination—and reasonably concluded that Plaintiff's
subjective complaints were not entirely consistent with the record. As to Plaintiff's back pain, the
medical record revealed a history of degenerative disc issues as well as arthritis. However, as the
ALJ noted, Plaintiff's examination with Dr. Aldea "failed to demonstrate any marked functional
limitations, secondary to back pain." AR 29. Indeed, as Dr. Aldea's report documented, Plaintiff
walked with a normal unassisted gait; had a minimally restricted range of motion of the lumbar

10

spine with extension, only mild tenderness to palpation in the lumbar spine area; and straight leg raising was negative. Additionally, Plaintiff had a full range of motion in the bilateral upper and lower extremities with no evidence of strength deficits. Moreover, as the ALJ further noted, the record was nearly entirely devoid of any medical evidence supporting Plaintiff's complaints of pain, such as "recurrent emergency room visits, inpatient hospital admissions, epidural injections or surgical intervention due an exacerbation of her symptoms." AR 29.

With respect to Plaintiff's complaints of bilateral foot pain and neuropathy, the ALJ's RFC assessment was also supported by a careful examination of the record. Although Dr. Aldea stated that Plaintiff had marked sensory deficits in the bilateral feet and moderate sensory deficits, likely due to diabetic neuropathy, the ALJ correctly determined that the medical record, as a whole, did not require a more restrictive RFC. Indeed, despite these findings, Dr. Aldea noted that Plaintiff walked with a normal unassisted gait, that she was able to perform transfers independently, and that there was no evidence of atrophy, inflammation or strength deficits in the bilateral lower extremities. Moreover, as the ALJ noted, Plaintiff testified that she had no balance issues prior to December 31, 2015.[2]

Plaintiff also argues that the ALJ included no relevant non-exertional limitations in his RFC determination related to Plaintiff's ability to concentrate, focus, change positions or time off task, despite evidence that such limitations were necessary. However, as the ALJ recounted, the medical

---

[2] While Plaintiff testified at the hearing that she started occasionally using a cane on December 31, 2015, after having toes amputated, this happened more than one year after her date of last insured. While "[d]iagnosis of an impairment after the date of last insured can support a finding of an earlier impairment date when corroborated by lay testimony and medical evidence describing a claimant's history and symptomatology," *Dilworth v. Colvin*, 158 F. Supp. 3d 238, 244 (D. Del. 2016), there is no record evidence suggesting that Plaintiff's neuropathy was so severe prior to her date of last insured, and Plaintiff does not argue otherwise. *See Bogar v. Comm'r of Soc. Sec.*, No. 08-1871, 2009 WL 1748865, at *10 (D.N.J. June 18, 2009) (affirming denial of benefits, because, based on the record evidence, the foot problem that allegedly disabled the plaintiff did not begin until after date of last insured).

evidence did not support any such limitations. While Plaintiff alleged some limitations in these areas due to her Grave's disease, thyroid condition, irritable bowel syndrome, and depression, Dr. Esralew, a consultive psychologist, did not note any significant issues. Further, as the ALJ stated, there is no record evidence that Plaintiff sought treatment for an emotional or psychological condition impacting her ability to concentrate or focus.

Thus, the RFC assessment at step four was supported by substantial evidence.

### B. The ALJ's Consideration of Plaintiff's Obesity

Plaintiff next contends that the ALJ erred by failing to sufficiently consider Plaintiff's obesity at step three and subsequent steps. In step three, an ALJ is required to determine whether any of a claimant's impairments, alone or in combination with other impairments, meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (a "listed impairment"). If a claimant is found to have a listed impairment or its equivalent, then she is considered disabled and the inquiry ends. *See Plummer*, 186 F.3d at 428. Obesity was removed as a "listed impairment" in 1999, but, as the Third Circuit has recognized, "this did not eliminate obesity as a cause of disability." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009) (citing SSR 00–3p, 65 Fed.Reg. 31039, 31040–42 (May 15, 2000)). To the contrary, "the Commissioner promulgated [Social Security Ruling] 00–3p, indicating how obesity is to be considered. This SSR replaced an automatic designation of obesity as a Listed Impairment, based on a claimant's height and weight, with an individualized inquiry, focused on the combined effect of obesity and other severe impairments afflicting the claimant." *Id.*

In 2002, SSR 00–3p was superseded by SSR 02–1p, 67 Fed.Reg. 57859–02 (Sept. 12, 2002), but SSR 02–1p did not materially amend SSR 00–3p. See Diaz, 577 F.3d at 503.

SSR 02–1p provides the following guidance:

> [W]e consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. They also instruct adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity.
>
> ....
>
> Because there is no listing for obesity, we will find that an individual with obesity "meets" the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing. We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing.... For example, when evaluating impairments under mental disorder listings 12.05C, 112.05D, or 112.05F, obesity that is "severe," ... satisfies the criteria in listing 12.05C for a physical impairment imposing an additional and significant work-related limitation of function and in listings 112.05D and 112.05F for a physical impairment imposing an additional and significant limitation of function.... We may also find that obesity, by itself, is medically equivalent to a listed impairment.... We will also find equivalence if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment.

Social Security Ruling, SSR 02–1p; Titles II and XVI: Evaluation of Obesity, 67 FR 57859–02. In *Diaz*, the Third Circuit, citing SSR 02–1p, confirmed that "an ALJ must meaningfully consider the effects of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." Diaz, 577 F.3d at 503.

Here, at step three, the ALJ did what he was required to do in considering Plaintiff's obesity. Indeed, the ALJ specifically noted the requirements of SSR 02-1p, and, accordingly, "fully considered obesity in the context of the overall record evidence in making this decision." AR 27. Moreover, the ALJ concluded that Plaintiff did not allege any functional limitations related to her obesity in her application or during her hearing testimony, and that no such limitation was supported by the medical evidence. To that end, the ALJ specifically referenced

13

record evidence indicating that Plaintiff's obesity did not impact her functioning in a significant relevant way, noting that she had no limitations in her walking or in performing transfers.

Thus, the ALJ properly considered Plaintiff's obesity at Step 3 and at subsequent steps.

## IV. **CONCLUSION**

For the reasons set forth above, I find that the ALJ's decision is supported by substantial evidence in the record. Accordingly, the ALJ's decision is affirmed.

Dated: March 26, 2020

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
United States Chief District Judge